Good morning. May I please the Court, Joe Siglain's the fourth Petitioner in this immigration appeal. The issue this morning is whether substantial evidence supports the IJ's finding that Petitioner was properly served with a notice to appear in December of 1998, which would have terminated his 10-year continuous physical presence required for cancellation of removal relief. Petitioner submits that substantial evidence does not support the IJ's finding and that he was not properly served with the notice to appear. The pertinent statute and regulations provide that written notice shall be given in person to an alien or if personal service is not practicable through service by mail to the alien or counseled record. Within that subsection, sufficient service is deemed when there's proof of attempted delivery to the last address provided by the alien and the third element of the statute and regulation is that proper service includes service on an alien's representative. In other words, that person is permitted to act on the alien's behalf. And that's what the Petitioner or the alien's behalf is. So what do we do with the findings, findings made by the IJ that Mr. Rodriguez was kind of flaky in his memory, he can't be relied upon, he tells one story and then he takes a break and, strangely enough, he talks to somebody and comes back and he has another story which is very different from the first one and the IJ says, you know, I'm not finding he's not credible, I just find he's completely unreliable and he gave this guy all this information and now he's telling us his story and I don't think he was put upon, he hasn't shown us he was put upon and the guy was his agent. What do we do with that, with all those findings? Your Honor, I would submit that I would concede that Respondent Petitioner's testimony wasn't the most crystalline testimony he could provide. However, we have a person here, I would submit, who was doing his best to recall events that happened some four or five years previous to his hearing, probably more than five years previous to his hearing. Was there any dispute that the person who filed the asylum application on the Petitioner's behalf was his representative? No, there isn't. There's no E-28 notice of appearance by attorney. No, I said, was there any dispute? Do you dispute that that person was his representative? We do. And so what evidence do you have in the record that would refute the IJ's finding to the contrary? Well, the I-589 only lists Petitioner's name and has presumably a signature which he denied was his signature, and even the IJ commented that he didn't believe it was his signature. Most significantly, Your Honor, is that on the 589, in the case of the Petitioner, he admitted that this is a typical notario situation where money is taken by a notario with the promise or the assurance that the individual will get papers or a work permit or obtain status. But how would he get the information, the personal information from the Petitioner if the Petitioner did not provide it to him? He admitted going to L.A., meeting with the name was some of the nature of some dispute, but he met with someone and asked to get papers. Well, Your Honor, I would submit that there is no evidence that he ever lived in L.A. In fact, there's ample. He wouldn't have to live in L.A. for the representative in L.A. to be his representative. No, I understood. But I believe he testified that this representative, one of two parents' information that wound up on the 589. What I believe is significant is that whoever helped this gentleman prepare papers, the 589, the asylum application, was not his accredited representative, had no authority to act on his behalf, didn't keep Petitioner advised as to what exactly they were going to file for him. Petitioner disavowed ever seeing the 589 prior to his hearing in 2002 regarding improper service. I would submit that no one bothered to ask Petitioner where were you living in 1998 when the notice to appear went out if you weren't living in Los Angeles on, quote, Wilshire Boulevard. Would that matter if the Petitioner had designated someone on Wilshire Boulevard as his agent or representative? Would it matter where he was actually living? Well, in terms of venue, eventually, yes, but we would submit that nobody apprised or kept Petitioner informed of what they were going to do for him. In fact, it's interesting to note that one of the envelopes that's in the administrative record which Petitioner disavows sending to the Immigration Service Center containing this 589 lists his name, not the consultant's name or the representative's name, lists his name with his Wilshire Boulevard address. And eventually it came back as non-excuse me, didn't come back as non-deliverable, but this is the typical notorious situation where he was victimized by someone who made assurances that they could help him out and didn't keep him apprised of what was going on to his ultimate detriment. But that sounds an awful lot like a – like something like an IAC argument, ineffective assistance of – or IAN, I guess, ineffective assistance of notario argument. Right. And I don't know that that was made to the BIA, was it? Pardon me? I don't know that that has been raised to the BIA that it should. No, it wasn't. I'm sorry. No, it wasn't specifically raised, but in a notario situation, it's not ineffective assistance of counsel, Your Honor, because he wasn't represented by counsel. I know. We sort of slurred it across. Right. It's ineffective assistance of notario. By a notario or a consultant. Even the IJ, in his decision, finding that there was proper service, commented specifically that this appeared to be consultant-assisted. Again, in his – in the administrative record, in his cancellation or removal application, he doesn't list any L.A. addresses. All his addresses are in northern California, including in 1998 when presumably this notice to appear was sent by regular mail. So we would submit that there is sufficient evidence to rebut any presumption that there was proper service of this notice to appear. Well, when you get to the point where there is a hearing before the IJ, it's not a presumption at that point. The IJ just takes the evidence and decides whether it believes one side or the other. The presumption goes out the window once you have the actual hearing before the IJ. If you submitted it just on the papers, then we would have the presumption and whether or not there was rebuttal. But the IJ actually had a complete hearing on this matter and was able to listen to the witnesses, review the evidence, ask questions. So then the IJ made a determination as to what was believable, what wasn't believable, and what the facts are. So you have a high burden to overcome the IJ's finding after having listened to all of the evidence. Yes. I stand corrected. Thank you. Would a reasonable adjudicator be compelled to find to the contrary? We would submit that this is the type of situation where the Petitioner disavows the 589, the address listed on the 589, and disavows his signature. And even the IJ commented that it did not appear to be the signature of Petitioner on that 589. So if you add up all the pieces together and cobble together the pieces of evidence here, we would submit that there is sufficient evidence to show that the notice to appear was not properly served. And if I could reserve rebuttal. All right. Thank you. We'll hear from the government. Good morning. Good morning. I'm Collette Winston for Respondent Attorney General Eric Holder. May it please the Court. The issue here is not notice. It's service. If I can back up a few paces, the relief requested by Mr. Rodriguez is cancellation of removal. That's discretionary relief. There are four requirements. The only requirement at issue here is whether Mr. Rodriguez proved that he was had 10 years of continuous physical presence. The beginning date for continuous physical presence is the date of arrival of the alien. Here it's either 1989 or 1990, depending on whether you trust the alien's testimony or you trust the notice to appear date. And it ends when the notice to appear is served on a moraine. Yes. The end date is the date of service of the notice to appear. Right. Here it's December 7th of 1998. Maybe. So the issue is the service, whether the service of the notice to appear to Mr. Rodriguez's last known address is sufficient service to constitute the end date of continuous physical presence. The answer is yes. The Board decision here was correct. The first place you look is the stop time rule of Immigration and Nationality Act, 240A.D.1. That rule defines the end date as when the alien is served with a notice to appear. This is service, not notice. The second step is that what is required of the government is proof of attempted delivery to the last address provided by the alien. That's in INA Section 239C. I think everybody concedes that. The question is, was it the last address provided by the alien? It was the only address provided by the alien. That's assuming the issue that's in front of us, isn't it? The question is, did he provide it? Is it not? And we do have a situation where the IJ did not make an adverse credibility finding, correct? Correct. So ultimately, it's not an adverse credibility, and so we find the alien credible. Correct. Correct? Now, what do you do with that? The alien's credible. He says, I don't know what this guy was doing. He didn't have my permission to sign my name. He didn't have my permission to give an address, et cetera, et cetera, et cetera, et cetera. What do we do with that? That's all I'm really asking you. That's right. But looking at the record, the asylum application in two places lists the Wilshire Boulevard, Los Angeles address. Look, if I go and there's some guy out in the street, and I say, what's your name? The guy says, well, I'm Rogelio Gomez. I say, really? And ask him a couple other questions, and I go file an asylum application. He doesn't even ask me to do it. I just file it and give an address somewhere in Los Angeles. Just assume that for a moment. Horror of horrors, that's what happens. Now, is that the address he even serves you? And by Rogelio? Well, if the spotlight is placed on the government, and that's the only address in the record, and that address appears three or four times in the record as the exact address, then that's the only address the government has to serve a notice to appear. Sure. But what's my hypo? Rogelio didn't tell me to give that as his address. It's not his address. He didn't give it as his address. It's just a rump address filed by some cuckoo, which I guess that would be in that case. All right? Now, are you telling me that the government can serve Rogelio there and bind him? Yes. Is that your point? Yes, I do, because that's the only – it's the last known address. It's the address in the record. But it has to be provided by the Petitioner or the Petitioner's representative. Right. So what do you do with that? What do you do with that? If it's not provided by the Petitioner, and I think everybody agrees it was not provided by the Petitioner, or if it's not provided by the authorized representative of the Petitioner, how can the government be entitled to rely on that address under the regulations in the law? Well, the application had to be filed by somebody. It doesn't matter. The law says it has to – the address has to be provided by the Petitioner or the Petitioner's representative. You can't just say because this address is in the record, we can rely on it regardless of who put it in the record. But here it was his representative. I disagree. How do we know that? Well, we know that because the attorney was asked who was at the Wilshire Boulevard address, who prepared the asylum application. And the attorney on page 109 said the immigration consultant. The Petitioner himself stated on pages 526, 527, 529, that it was somebody he consulted maybe to submit work papers, but he submitted his photograph. He submitted information about his parents, all of which appear in the asylum application. It wasn't just some random person on the street that asked him for that information. He himself paid a consultant, an immigration service person, a notario, a notary. He paid someone to prepare documents. Among the documents this someone, probably named Rogelio, page 147, prepared was the asylum application. And the Wilshire Boulevard address was Rogelio's address. It wasn't some random address. And that address appeared on the fingerprints card where Mr. Rodriguez's fingerprints appeared, where his signature did appear. According to Mr. Rodriguez, it was his signature on the fingerprints card, and it was his parents' name on the asylum application. It was his photograph on the asylum application, although it was not his signature on the asylum application. And maybe he wasn't aware that the application had been filed for him, but it was a complete application with an entire story about his requests for political asylum. So the eight, if you put the spotlight on the agency, the agency saw the Los Angeles address twice in the asylum application. Saw it on the envelope as the return address for the asylum application on the fingerprint card, and that was the only address the agency had. You're not suggesting that it's inappropriate for the spotlight to be put on the agency, are you? No. I think it's very appropriate for the spotlight to be put on the agency. And what is required is that the agency prove that they attempted delivery, didn't have to result in delivery. Didn't have to be actual notice. It had to be an attempt of delivery to the last address provided. Maybe it wasn't provided by the alien because the alien didn't write it into his form, but it was provided to the government in an asylum application. Well, you keep saying that that's not enough if the alien didn't provide it or a representative of the alien didn't provide it. Well, here it was clearly his representative, someone he paid to complete papers. That means that person represents him. That's not the argument you made. You said if it's in an asylum application, that's enough. And I don't think that's a correct statement of the law. Well, I would retract that then because under 8 CFR 292.5, service on the alien's representative is good service. The service shall be given to an attorney or representative of record. In fact, Mrs. Rodriguez also had a Los Angeles address, interestingly enough, a different Los Angeles address. But her representative furnished her with the information that she needed. In this case, Mr. Rodriguez's representative by his own testimony, which we deem credible, never received the notice. But it's not the receipt of the notice. It's whether it was properly served and whether there was an attempted delivery to the last address provided. And it may not have been directly provided by the alien, but I think in this case it was provided by his representative. I see that my time is nearly up. If there are no further questions. The petition for review should be denied. Thank you. Rebuttal. Yes. Just briefly, Your Honor. It's significant to note again that nowhere in the record is a representative, a consultant, an attorney, or a preparer listed. Does that make a difference? I believe it does, Your Honor. If, in fact, there was a legitimate representative or a consultant even, that person would have indicated so in the asylum application. We have a situation all too often in notarial situations, rather, where they don't subscribe their name to the paperwork. They put the paperwork in the name of the alien, in this case without the alien's knowledge that an L.A. address was being used to his detriment. But does that make him any less a representative? I believe it does. I believe that it should be address reasonably calculated to give sufficient notice to the alien, where you have significant liberty. That's not what the regulation says. It says last known address. I understand, Your Honor. However, if you have a petitioner who innocently is not aware of what's going on and isn't being fully advised as to what's going on or what address is being used for communicating with the court or with the service, then you have a situation where he's been victimized by a notario. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court.
judges: Wells, Fernandez, Rawlinson